# CASES

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY,

### OCTOBER TERM, 1860.

~~~~~~~~~~~~~~~~~

### SOLOMON MATLACK *vs.* SAMUEL JAMES.

Partnership property must first be applied to the payment of the partnership debts. The individual creditors are entitled only to share the net residue after the debts of the partnership are satisfied.

Real estate, although the title stands in the names of the individuals composing the firm, if purchased with the money and for the uses of the firm, belongs to the partnership, and is liable in the first place to the partnership debts.

One partner cannot convey to a creditor of his own, so as to give him a preference over the creditors of the firm, his undivided interest in the real estate belonging to the firm, although the title to such property stands in the individual names of the partners—such grantee having notice of the equitable rights of the firm in the premises.

———

*Voorhees* and *Browning,* for assignees.

*Carpenter* and *Halsted,* contra.

THE CHANCELLOR. In the year 1855, Samuel James, James B. Cox, Jacob Iszard, and Ira Iszard, partners under the name of James Iszard & Co., were engaged in the manufacture of glass, at Milford, in the county of Bur-

Matlack v. James.

lington. On the 29th of August, 1855, for the purpose of securing to the creditors of the firm an equal distribution of their property and effects, they executed to Joseph Trimble and Aaron N. Haines an assignment of all the real estate whereof they, as partners in trade, were seized or entitled to, and also of all the personal estate belonging to said partners, in trust, to be distributed among the creditors of the firm in proportion to their respective demands, pursuant to the directions of the " act to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors."

On the 25th of August, 1855, (four days before the execution of the deed of assignment) Jacob Iszard and Ira Iszard, two of the partners, by deed of bargain and sale duly executed for the consideration therein expressed, of $2456, conveyed to their father, Joseph Iszard, their share, being the one equal undivided half part of the real estate known as the Milford Glass Factory, being the same premises specified in the inventory annexed to the deed of assignment as a part of the partnership property.

The validity of the conveyance is contested by the assignees.

The Iszards held title to this land in their individual names, not in the name of the partnership; but it is clear, from the evidence, that it constituted in fact a portion of the capital of the partnership. The firm was originally composed of James Cox and Whitman. The property was conveyed to them in their individual names, but was in fact paid for by the funds advanced for the purposes of the partnership. On the fourteenth of October, 1854, Jacob Iszard was admitted into the firm as an equal partner with the three others, they conveying to him one-fourth of the real estate, he paying the one-fourth of the estimated value of the partnership property. On the 3d of January, 1855, Thomas Whitman, one of the four partners, sold out his interest in the concern to Ira Iszard. By deed of that date, for the consideration of $1300, being

the amount which Whitman had put into the firm, he conveyed the equal fourth part of the real estate to Ira Iszard. On the same day, Ira Iszard received from the other partners a certificate that he had put into the Milford Glass Factory firm thirteen hundred dollars, for which sum he was acknowledged as the one-fourth owner of said Milford Glass Works, with the appurtenances. It is conceded that he paid but one sum of $1300, and that the amount which he paid Whitman for his interest in the partnership constituted him an equal partner and the owner of the one-fourth of the real estate belonging to the partners. The evidence leaves no room for doubt that the real estate was in fact partnership property, purchased virtually with partnership funds, and used for partnership purposes, though standing in the name of the individual partners. It was held by the partners as tenants in common in trust for the partnership.

Joseph Iszard, to whom the half of the property was conveyed, previous to the assignment had notice of the equitable claim of the partnership upon the property. The money which his sons put into the firm was in fact advanced by him and his wife. In repayment for the moneys thus advanced the deed was executed. He knew that his sons were partners in the concern; that the money was advanced for the very purpose of their going into business as partners, and that they had advanced no other money for the purchase of the land. When, therefore, the sons proposed to convey to him their respective fourth parts of the glass-house property, he must have known that it was their interest in the real estate as partners in the company, and not their individual property. It is in evidence, too, that the certificate given by the firm to Ira Iszard, upon his purchase of the interest of Whitman, that he was a partner in the concern, and entitled to an equal fourth part of the glass works property, was handed by the father to one of the partners to be signed. There is surely enough to charge the father with

knowledge of the equitable claim of the partnership and of the creditors of the partnership at the time he accepted the title from his sons.

If no assignment had been made by the partners upon a deficiency of assets to pay the debts of the firm, Joseph Iszard would be regarded in equity as a trustee of this land for the benefit of the creditors of the partnership.

The partnership property must first be applied to the payment of the partnership debts. The individual creditors are entitled only to share the net residue after the debts of the partnership are satisfied.

It is clear, therefore, that Joseph Iszard cannot hold this property against the creditors of the partnership, and that he will not be permitted in equity to receive any part of the proceeds of the sale until the claims of the creditors are satisfied.

Regarding the case as now before the court upon a mere application by Joseph Iszard for the surplus money arising from the proceeds of the sale under the mortgage the application must be denied.

Regarding it as a hearing upon cross-bill and answer, in pursuance of the suggestion of the late Chancellor and in accordance with the agreement of counsel, I am of opinion that the deed to Joseph Iszard should be held void as against the title of the assignees.

The order will be made without costs.

1. Because I am not satisfied of the existence of any actual fraud or intention to defraud in the execution of the conveyance to Joseph Iszard. These young men, the sons of the grantee, entered this partnership ignorant of its affairs, and if not totally bankrupt when they entered it, it soon proved a total wreck through no fault of theirs. Its management was in other hands. The whole money paid in by them was advanced by their parents, and it was natural that they should attempt to protect their interests. The deed I am willing to believe was executed with no fraudulent design, but with an honest purpose,

though clearly under a mistaken apprehension of their rights.

2. The course pursued by the assignees in the prosecution of their claim has neither been ingenuous nor consistent with fair dealing.